IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 18-cv-01034-MEH

CHRIS SANCHEZ,

    Plaintiff,

v.

PESCADOR,
BENJAMIN ARGUELLO,
MIKE JONES,
SAMANTHA,

    Defendants.

---

# ORDER

---

**Michael E. Hegarty, United States Magistrate Judge.**

This action arises out of the incarceration of Plaintiff Chris Sanchez ("Sanchez"), an inmate at the Buena Vista Correctional Facility in Colorado ("BVCF"). Sanchez's Amended Complaint brings three claims[1] pursuant to 42 U.S.C. § 1983: (1) Claim One for excessive force in violation of the Eighth Amendment against Defendants Jones, Pescador, and Arguello; (2) Claim Two for "cruel punishment" in violation of the Eighth Amendment against Defendants Jones, Pescador and Arguello; and (3) Claim Three for deliberate indifference in violation of the Eighth Amendment against Defendants Pescador, Arguello, and "Nurse Samantha."[2] In response, Defendants Jones, Pescador, and Arguello ("CDOC Defendants") filed a motion to dismiss pursuant to Fed. R. Civ. P.

---

[1] Claims Four and Five were dismissed by the Honorable Christine M. Arguello during pre-assignment screening of this case. ECF No. 13. Therefore, the Court will not address the Defendants' argument seeking dismissal based on *Heck v. Humphrey*, 512 U.S. 477 (1994).

[2] Defendant "Samantha" is not one of the CDOC Defendants who move for dismissal.

12(b)(1) and 12(b)(6) arguing the Court lacks jurisdiction to hear certain claims and the Plaintiff fails to plausibly state the remaining claims. For the reasons that follow, the Court will grant in part and deny in part the CDOC Defendants' motion.

**STATEMENT OF FACTS**

The following are relevant factual allegations (as opposed to legal conclusions, bare assertions, or merely conclusory allegations) made by Sanchez in his Amended Complaint, which are taken as true for analysis under Fed. R. Civ. P. 12(b)(6) pursuant to *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Sanchez's claims against the CDOC Defendants arise from an incident that occurred on May 23, 2017, when Sanchez was incarcerated at Sterling Correctional Facility ("SCF"). Sanchez alleges that he was being escorted from his cell to "table time," when another prisoner near him became "unruly." Sanchez told staff that he preferred not to proceed with table time; however, the CDOC Defendants told him he would be seated at the table until the situation resolved. Defendants proceeded to shackle Sanchez to the table by his hands and feet; Sanchez was unable to stand or move and he was "at the epicenter of a violent, disruptive situation" involving the "unruly" prisoner. Pescador told Sanchez, "we're gonna show you how we deal with punks who act up," and Arguello said, "if you don't like it, tough! But you're gonna watch." The Defendants proceeded to assault the unruly prisoner and forcibly removed him from the area.

Defendants had left a pair of handcuffs sitting on the table in front of Sanchez; Sanchez "grabbed them by sliding them towards himself." The Defendants immediately surrounded Sanchez, and Jones, who drew a taser and pointed it at Sanchez, said, "put down the cuffs, punk." Sanchez was upset at being called a "punk," which in prison means an inmate who is raped and sexually trafficked by other inmates, and responded, "who the f— you think you are talkin' to?" Jones fired

the taser at Sanchez and knocked Sanchez from his seat; however, because of the shackles, Sanchez hung from his wrists and ankles and did not speak or move. Pescador and Arguello then unholstered cannisters of OC spray and sprayed Sanchez directly in the face and eyes, despite the fact that they knew of a medical order prohibiting them from using OC spray on or near Sanchez, who suffers from asthma. The spray entered Sanchez's eyes and, eventually, caused a "serious" eye infection. Sanchez also began choking from an inability to breathe, but the Defendants deprived Sanchez of his rescue inhaler. The Defendants then struck Sanchez with their knees and closed fists.

## LEGAL STANDARDS

**I.      Dismissal under Fed. R. Civ. P. 12(b)(1)**

Rule 12(b)(1) empowers a court to dismiss a complaint for "lack of subject matter jurisdiction." Fed. R. Civ. P. 12(b)(1). Dismissal under Rule 12(b)(1) is not a judgment on the merits of the plaintiff's case, but only a determination that the court lacks authority to adjudicate the matter. *See Butler v. Kempthorne*, 532 F.3d 1108, 1110 (10th Cir. 2008) (recognizing federal courts are courts of limited jurisdiction and "there is a presumption against our jurisdiction"). A court lacking jurisdiction "must dismiss the cause at any stage of the proceeding in which it becomes apparent that jurisdiction is lacking." *Full Life Hospice, LLC v. Sebelius*, 709 F.3d 1012, 1016 (10th Cir. 2013). A motion to dismiss under Rule 12(b) "admits all well-pleaded facts in the complaint as distinguished from conclusory allegations." *Smith v. Plati*, 258 F.3d 1167, 1174 (10th Cir. 2001). The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction. *See Pueblo of Jemez v. United States*, 790 F.3d 1143, 1151 (10th Cir. 2015). Accordingly, Sanchez bears the burden in this case of establishing that this Court has jurisdiction to hear his claims.

Generally, Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction take two forms. *Holt v. United States*, 46 F.3d 1000, 1002 (10th 1995).

3

> First, a facial attack on the complaint's allegations as to subject matter jurisdiction questions the sufficiency of the complaint. In reviewing a facial attack on the complaint, a district court must accept the allegations in the complaint as true. Second, a party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends. When reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations. A court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1). In such instances, a court's reference to evidence outside the pleadings does not convert the motion to a Rule 56 motion.

*Id.* at 1002–03 (citations omitted); *see also Pueblo of Jemez v. United States*, 790 F.3d 1143, 1148 n.4 (10th Cir. 2015). The present motion launches a facial attack on this Court's subject matter jurisdiction; therefore, the Court will accept the Amended Complaint's factual allegations as true for its Rule 12(b)(1) analysis.

## II. Dismissal Pursuant to Fed. R. Civ. P. 12(b)(6)

The purpose of a motion to dismiss under Fed. R. Civ. P. 12(b)(6) is to test the sufficiency of the plaintiff's complaint. *Sutton v. Utah State Sch. For the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 2008). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pled facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id. Twombly* requires a two-prong analysis. First, a court must identify "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely conclusory. *Id.* at 679. Second, the Court must consider the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id.* at 681. If

the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id.* at 680.

Plausibility refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (quoting *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008)). "The nature and specificity of the allegations required to state a plausible claim will vary based on context." *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011). Thus, while the Rule 12(b)(6) standard does not require that a plaintiff establish a prima facie case in a complaint, the elements of each alleged cause of action may help to determine whether the plaintiff has set forth a plausible claim. *Khalik*, 671 F.3d at 1191.

However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. The complaint must provide "more than labels and conclusions" or merely "a formulaic recitation of the elements of a cause of action," so that "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint has made an allegation, "but it has not shown that the pleader is entitled to relief." *Id*. (quotation marks and citation omitted).

### III. Treatment of a Pro Se Plaintiff's Complaint

The Supreme Court has directed courts to hold pro se litigants' pleadings "to less stringent standards than formal pleadings drafted by lawyers." *Tatten v. City & Cty. of Denver*, 730 F. App'x 620, 623 (10th Cir. 2018), *cert. denied*, 139 S. Ct. 826, 202 L. Ed. 2d 579 (2019) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). The Tenth Circuit interpreted the *Haines* rule to mean "that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so." *Id.* (quoting *Hall v. Bellmon*, 935 F.2d 1106, 1110 & n.3 (10th Cir. 1991)). "This liberal-construction rule does not, however, relieve a pro se plaintiff of his burden to present sufficient facts to state a legally cognizable claim, nor will the court act as his advocate and make his arguments for him." *Id.* at 624. Accordingly, the court must "not supply additional facts, nor...construct a legal theory for plaintiff that assumes facts that have not been pleaded." *Peterson v. Shanks*, 149 F.3d 1140, 1143 (10th Cir. 1998) (citing *Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989)). In addition, the Tenth Circuit instructs that courts must "hold pro se litigants to the requirements of the Federal Rules." *Clark v. Time, Inc.*, 727 F. App'x 975, 978 (10th Cir. 2018).

## ANALYSIS

Sanchez sues the CDOC Defendants in both their individual and official capacities, seeking compensatory and punitive damages, "declaratory" relief, and injunctive relief in the form of an order terminating or suspending the employment of the CDOC Defendants and instituting policy changes "prohibiting similar violence or assault . . . and assurance that this will never occur again."

### I. Sovereign Immunity

Defendants argue they are absolutely immune from liability pursuant to the doctrine of sovereign immunity for monetary damages and retroactive injunctive relief alleged against them in their official capacities. Claims against state officials in their official capacities are essentially

6

claims against the state entity. *Ky. v. Graham*, 473 U.S. 159, 165 (1985) ("Official-capacity suits, in contrast, generally represent only another way of pleading an action against an entity of which an officer is an agent.") (citation and quotations omitted). It is well-established that "the Eleventh Amendment precludes a federal court from assessing damages against state officials sued in their official capacities because such suits are in essence suits against the state." *Hunt v. Bennett,* 17 F.3d 1263, 1267 (10th Cir. 1994). Absent an unmistakable waiver by a state of its Eleventh Amendment immunity, or an unmistakable abrogation of such immunity by Congress, the Eleventh Amendment provides absolute immunity from suit in federal courts for states and their agencies. *Blatchford v. Native Village of Noatak & Circle Village,* 501 U.S. 775, 785-86 (1991). Thus, an official-capacity lawsuit is appropriate only where the claims could be sustained against the entity in its own name. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978).

The Supreme Court has recognized an exception to the Eleventh Amendment for such actions where a plaintiff is seeking prospective enforcement of their federal rights. *See Ex parte Young,* 209 U.S. 123, 159-60 (1908). But *Young* makes it clear that this exception "may not be used to obtain a declaration that a state officer has violated a plaintiff's federal rights in the past" or as a means for seeking money damages. *Buchwald v. Univ. of New Mexico Sch. of Med.,* 159 F.3d 487, 495 (10th Cir. 1998) (citations and quotations omitted).

In this case, Sanchez seeks monetary damages and retroactive injunctive relief (employment suspension/termination) against the CDOC Defendants. ECF No. 10 at 14. Although vague, the Court liberally construes Sanchez's pleading as also seeking prospective injunctive relief in the form of policy changes "prohibiting similar violence or assault." *See id*. Therefore, to the extent that Sanchez seeks monetary damages and other relief for past harms against Defendants in their official capacities, the Court finds it lacks jurisdiction under the Eleventh Amendment to hear such claims.

7

However, the request for prospective injunctive relief will not be dismissed, unless Defendants demonstrate that Sanchez fails to state plausible claims for relief.

## II.     Qualified Immunity

In their individual capacities, the CDOC Defendants base their request for dismissal on the doctrine of qualified immunity, which protects from litigation a public official whose possible violation of a plaintiff's civil rights was not clearly a violation at the time of the official's actions. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "Qualified immunity balances two important interests - the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Because qualified immunity is an immunity from suit, rather than a mere defense to liability, it is effectively lost if a case is erroneously permitted to go to trial. *Id.* at 231; *Ahmad v. Furlong*, 435 F.3d 1196, 1198 (10th Cir. 2006) ("The privilege is an immunity from suit rather than a mere defense to liability."). The "driving force behind creation of the qualified immunity doctrine was a desire to ensure that insubstantial claims against government officials will be resolved prior to discovery." *Pearson*, 555 U.S. at 231-232 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640, n.2 (1987)). Accordingly, qualified immunity questions must be resolved at the earliest possible stage in litigation." *Id.* at 232.

When a defendant asserts the defense of qualified immunity, the burden shifts to the plaintiff to overcome the asserted immunity. *Riggins v. Goodman*, 572 F.3d 1101, 1107 (10th Cir. 2009). Traditionally, there has been a two-step process for resolving qualified immunity questions: "First, a court must decide whether the facts that a plaintiff has alleged . . . or shown . . .make out a violation of a constitutional right. . . . Second, if the plaintiff has satisfied this first step, the court must decide whether the right at issue was clearly established at the time of the defendant's alleged

misconduct." *Pearson*, 555 U.S. at 232 (quoting *Saucier v. Katz*, 533 U.S. 194 (2001) (internal citations and quotation marks removed)). The Supreme Court affords courts the discretion to decide "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id*. at 236; *see also Christensen v. Park City Mun. Corp.*, 554 F.3d 1271, 1277 (10th Cir. 2009). An official's conduct violates clearly established law when, at the time of the challenged conduct, "[t]he contours of [a] right [are] sufficiently clear" that every "reasonable official would have understood that what he is doing violates that right." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). The Court will begin by determining whether Sanchez states plausible constitutional violations.

    A.    <u>Does Sanchez Plausibly Allege Excessive Force Against the CDOC Defendants?</u>

As there exists no standalone claim for "cruel punishment" under the Eighth Amendment, the Court liberally construes Sanchez's allegations as claiming "excessive force" in Claims One and Two, particularly as both claims are based on the same set of facts.[3]

"[A]n excessive force claim involves two prongs: (1) an objective prong that asks if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation, and (2) a subjective prong under which the plaintiff must show that the officials acted with a sufficiently culpable state of mind." *Redmond v. Crowther*, 882 F.3d 927, 936–37 (10th Cir. 2018) (quoting *Giron v. Corr. Corp. of Am.*, 191 F.3d 1281, 1289 (10th Cir. 1999)). An official has a culpable state of mind if he uses force "maliciously and sadistically for the very purpose of causing harm," rather

---

[3]"Post-conviction claims for excessive force are brought under the Eighth Amendment." *Roska v. Peterson*, 328 F.3d 1230, 1242 (10th Cir. 2003) (citing *Metcalf v. Long*, 615 F. Supp. 1108, 1118-20 (D. Del. 1985)); *see also United States v. Jones*, 254 F. App'x 711, 718 (10th Cir. 2007) (noting the difference between "excessive force in a prison setting (Eighth Amendment - cruel and unusual punishment) [and] excessive force outside the prison setting (Fourth Amendment - reasonable search and seizure).").

9

than "in a good faith effort to maintain or restore discipline." *Id.* at 936-37 (citing *Whitley v. Albers*, 475 U.S. 312, 320–21 (1986)).

The CDOC Defendants argue that even assuming Sanchez plausibly states the objective prong, he fails to allege the subjective prong because "Defendants did not act maliciously and sadistically. . . . Plaintiff admittedly grabbed the restraints off of a table. He was non-compliant with staff directives and swung the restraints in an attempt to assault staff." Mot. 9. Notably, the first and last sentences of Defendants' argument are factual allegations that would be improperly considered under Fed. R. Civ. P. 12(b)(6). *Iqbal*, 556 U.S. at 678.

Taking as true the facts alleged in the Amended Complaint as I must, the Court finds that Sanchez plausibly alleges claims for excessive force in violation of the Eighth Amendment. While Sanchez alleges that he did, in fact, "grab" the handcuffs left on the table by the Defendants, he also alleges he could move only somewhat since he was shackled to the table by his wrists and ankles. Furthermore, even assuming the taser used by Jones was appropriate force given Sanchez's grasp of the handcuffs, the use of the OC spray against Sanchez, particularly considering his asthma and the medical order prohibiting its use against him, and the physical punches and knee strikes, if true, could be found to be excessive under the circumstances.

As for the subjective prong, Sanchez alleges that after he was tased, he was hanging limp and not moving, but Pescador and Arguello sprayed him in the face and eyes with the OC spray although "BOTH Arguello and Pescador were fully aware of the medical order prohibiting the use of OC spray on [ ] Sanchez." Am. Compl. at 6. Moreover, following use of both the taser and the spray, all three Defendants used "closed fists and knees" against Sanchez, although he was shackled, "compliant," and "not moving." *Id.* The Court finds these allegations support a plausible inference that Defendants applied force against Sanchez "maliciously and sadistically for the very purpose

of causing harm," rather than "in a good-faith effort to maintain or restore discipline." *Smith v. Cochran*, 339 F.3d 1205, 1212 (10th Cir. 2013); *see also Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010) ("An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury.").

Further, to satisfy the qualified immunity analysis, the Court must determine whether the alleged constitutional right was "clearly established." Recently, a district court in this Circuit coherently and succinctly set forth the current prevailing law on this issue:

> "To qualify as clearly established, a constitutional right must be 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Redmond v. Crowther*, 882 F.3d 927, 935 (10th Cir. 2018) (quoting *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015)). In determining whether the law was clearly established at the time of the alleged violation, a court must ask whether the plaintiff has "identif[ied] an on-point Supreme Court or published Tenth Circuit decision; alternatively, 'the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains.'" *Quinn v. Young*, 780 F.3d 998, 1005 (10th Cir. 2015) (quoting *Weise v. Casper*, 593 F.3d 1163, 1167 (10th Cir. 2010)). To show that the law is clearly established, a plaintiff need not identify a case that is "exactly on point," *Weise*, 593 U.S. at 1167, "but existing precedent must have placed the ... constitutional question beyond debate." *Mullenix*, 136 S. Ct. at 308 (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). "This exacting standard 'gives government officials breathing room to make reasonable but mistaken judgments' by 'protect [ing] all but the plainly incompetent or those who knowingly violate the law.'" *City & Cty. of San Francisco v. Sheehan*, 135 S. Ct. 1765, 1774 (2015) (quoting *al-Kidd*, 563 U.S. at 743). And, "[i]n furthering the protective aims of qualified immunity, it is important that courts be especially sensitive to the need to ensure 'a substantial correspondence between the conduct in question and prior law allegedly establishing that the defendant's actions were clearly prohibited,' where the legal standards of liability under the prior law are broad and general or depend on a balancing of discrete and sometimes opposing interests." *Cummings v. Dean*, 913 F.3d 1227, 1240 (10th Cir. 2019) (quoting Estate of B.I.C. v. Gillen, 761 F.3d 1099, 1106 (10th Cir. 2014)).

*Ali v. Lambert*, No. 16-CV-0027-CVE, 2019 WL 1867954, at *2 (N.D. Okla. Apr. 25, 2019).

Here, the Court finds the law prohibiting Defendants' alleged conduct in "assaulting" Sanchez with OC spray in the face and eyes and with fists and knees to the body while he was

11

shackled and unmoving was clearly established by the Supreme Court and Tenth Circuit Court of Appeals at the time of the alleged incident in May 2017.[4] *See Hudson v. McMillian*, 503 U.S. 1, 5 (1992) (reversing dismissal of excessive force claim alleging prison officers beat an inmate while he was shackled); *Miller v. Glanz*, 948 F.2d 1562, 1564, 1567 (10th Cir. 1991) (holding allegations sufficient to state an Eighth Amendment claim where officers kicked, beat, and choked a prisoner who was handcuffed behind his back and whose ankles were also restrained).

Accordingly, the Court finds the CDOC Defendants are not entitled to qualified immunity for Sanchez's allegations of "excessive force" in Claims One and Two.

    B.    <u>Does Sanchez Plausibly Allege Deliberate Indifference Against Pescador and Arguello?</u>

For his Claim Three, Sanchez alleges that "Pescador and Arguello sprayed OC into [Sanchez's] face. These men violated medical orders which is tantamount to denial of or interference with medical care." Am. Compl. 8. He also alleges these Defendants "forcefully held [Sanchez] in place while striking him with knees and closed fists as Sanchez choked and suffocated," as he was "unable to utilize his rescue inhaler." *Id.*

---

[4]The Court is mindful of the Tenth Circuit's admonition that a plaintiff bears the burden of citing to the court what he or she thinks constitutes clearly established law. *See Thomas v. Durastanti*, 607 F.3d 655, 669 (10th Cir. 2010). The cases following this requirement typically involve plaintiffs who are represented by counsel. *See, e.g., Gutierrez v. Cobos*, 841 F.3d 895, 903 (10th Cir. 2016); *Rojas v. Anderson*, 727 F.3d 1000, 1005-06 (10th Cir. 2013); *Smith v. McCord*, 707 F.3d 1161, 1162 (10th Cir. 2013). In fact, the Tenth Circuit has recently reversed a trial court's dismissal of a ***pro se*** plaintiff's excessive force claim – where the trial court found the plaintiff had failed to identify a case demonstrating his right was clearly established – by itself pointing to a Supreme Court case sufficiently similar to the facts alleged and finding the plaintiff's right was clearly established. *See Ali v. Duboise*, 763 F. App'x 645, 651-52 (10th Cir. 2019). Nevertheless, even if the Plaintiff here was required, but failed, to point to clearly established law in this case, the Court finds the Plaintiff's allegations constitute "the rare obvious case, where the unlawfulness of the officer's conduct [taken as true] is sufficiently clear even though existing precedent does not address similar circumstances." *City of Escondido v. Emmons*, -- U.S. --, 139 S. Ct. 500, 504 (2019).

"[P]rison officials violate the Eighth Amendment's ban on cruel and unusual punishment if their 'deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain.'" *Self v. Crum*, 439 F.3d 1227, 1230 (10th Cir. 2006) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). Sanchez must meet both the objective and subjective components constituting the test for deliberate indifference. *Callahan v. Poppell*, 471 F.3d 1155, 1159 (10th Cir. 2006). "The objective prong of the deliberate indifference test examines whether the prisoner's medical condition was 'sufficiently serious' to be cognizable under the Cruel and Unusual Punishment Clause." *Al–Turki v. Robinson*, 762 F.3d 1188, 1192 (10th Cir. 2014). The Tenth Circuit established that "[a] medical need is considered sufficiently serious to satisfy the objective prong if the condition 'has been diagnosed by a physician as mandating treatment or is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Id.* at 1192–93 (quoting *Oxendine v. Kaplan*, 241 F.3d 1272, 1276 (10th Cir. 2001)).

The subjective component is met if Sanchez demonstrates the Defendants "knew he faced a substantial risk of harm and disregarded that risk, by failing to take reasonable measures to abate it." *Callahan*, 471 F.3d at 1159 (quoting *Kikumura v. Osagie*, 461 F.3d 1269, 1293 (10th Cir. 2006), *overruled on other grounds as recognized in Robbins v. Oklahoma*, 519 F.3d 1242, 1246 (10th Cir. 2008)). The subjective component requires an "inquiry into a prison official's state of mind when it is claimed that the official has inflicted cruel and unusual punishment." *Kikumura*, 461 F.3d at 1293 (quoting *Farmer*, 511 U.S. at 838). This component is equivalent to "criminal recklessness, which makes a person liable when she consciously disregards a substantial risk of harm." *Beauclair v. Graves*, 227 F. App'x 773, 776 (10th Cir. 2007) (quoting *Mata v. Saiz*, 427 F.3d 745, 752 (10th Cir. 2005)).

Here, Sanchez alleges a plausible claim for deliberate indifference to his serious medical need. *See Hines v. Wallace*, 982 F.2d 528 (10th Cir. 1992) (citing *Wilson v. Seiter*, 501 U.S. 294, 297 (1991) and *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)) ("Failure to attend to a prisoner's medical needs, whether the result of prison guards denying access to medical care or intentionally interfering with the treatment once prescribed, may violate this prohibition if it amounts to 'deliberate indifference.'"). First, Sanchez's allegations that he requires a rescue inhaler for an asthma attack and a medical order prohibiting OC spray plausibly allege the objective prong that he suffers from a condition "diagnosed by a physician as mandating treatment." *See al-Turki*, 762 F.3d at 1192. Second, as set forth above, Sanchez plausibly alleges the subjective component by asserting that Pescador and Arguello knew of the medical order prohibiting use of OC spray at or near Sanchez, but "consciously disregarded a substantial risk of serious harm" when they sprayed him in the face and eyes, he suffered an asthma attack during which he "choked and suffocated," and Defendants "denied [him] access to his rescue inhaler" while they "str[uck] [Sanchez] with knees and closed fists." Am. Compl. 8.

Furthermore, the alleged constitutional right to be protected from the "unnecessary and wanton infliction of pain" by prison guards who allegedly deny an inmate prompt medical treatment was clearly established at the time of the incident. *See Sealock v. Colorado*, 218 F.3d 1205, 1210-11 (10th Cir. 2000) (reversing summary judgment in favor of prison guard who allegedly delayed medical treatment for plaintiff inmate who suffered from chest pain and symptoms of a heart attack); *Estelle*, 429 U.S. at 104-05 (1976) ("prison guards' deliberate indifference to a prisoner's serious medical needs is cruel and unusual punishment"); *Howard v. Dickerson*, 34 F.3d 978, 980–81 (10th Cir. 1994) ("According to *Estelle v. Gamble*, deliberate indifference encompasses intentional interference with prescribed treatment."); *Ralston v. McGovern*, 167 F.3d 1160, 1162 (7th Cir. 1999)

14

(reversing summary judgment in favor of prison guard who refused prescription pain medication to an inmate diagnosed with cancer, finding the law prohibiting such conduct clearly established and collecting cases); *Cooper v. Casey*, 97 F.3d 914, 917 (7th Cir. 1996) (upholding verdict on claim of deliberate indifference against multiple guards who beat, kicked, and maced inmates and afterward refused medical attention for severe muscular pain, cuts, and burning sensation in eyes and skin from mace).

The Court concludes that Defendants Pescador and Arguello are not entitled to qualified immunity from liability for the allegations asserted in Claim Three.

## **CONCLUSION**

The Court concludes that it lacks jurisdiction to hear Sanchez's claims against the CDOC Defendants in their official capacities for monetary damages and retrospective injunctive relief. However, taking Sanchez's allegations as true, the Court concludes that Sanchez has stated plausible claims of excessive force in violation of the Eighth Amendment against Defendants Jones, Pescador, and Arguello (Claims One and Two, construed as one excessive force claim against the CDOC Defendants), and plausible claims of deliberate indifference in violation of the Eighth Amendment against Defendants Pescador and Arguello (Claim Three) in their individual capacities for monetary damages and in their official capacities for prospective injunctive relief. Defendants Jones, Pescador, and Arguello are not entitled to qualified immunity at this stage of the litigation. Accordingly, the CDOC Defendants' Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) [filed December 20, 2018; ECF No. 26] is **granted in part and denied in part** as set forth herein.

SO ORDERED.

Dated this the 25th day of June, 2019, in Denver, Colorado.

        BY THE COURT:

        *Michael E. Hegarty*

        Michael E. Hegarty
        United States Magistrate Judge