IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 18-cv-01034-MEH

CHRIS SANCHEZ,

    Plaintiff,

v.

PESCADOR,
BENJAMIN ARGUELLO,
MIKE JONES,
SAMANTHA,

    Defendants.

---

## ORDER

---

**Michael E. Hegarty, United States Magistrate Judge.**

Defendants Pescador, Arguello, and Jones (collectively, "CDOC Defendants") seek summary judgment[1] on the Plaintiff's remaining claims of excessive force in violation of the Eighth Amendment (Claims One and Two, construed as one excessive force claim against the CDOC Defendants) and deliberate indifference in violation of the Eighth Amendment against Defendants Pescador and Arguello (Claim Three) in their individual capacities for monetary damages and in their official capacities for prospective injunctive relief.[2] In response, Plaintiff argues Defendants'

---

[1]Although defense counsel entered his appearance for Defendant "Nurse Samantha" on July 30, 2019 (ECF 48), she does not move for summary judgment here.

[2]Claims Four and Five were dismissed by the Honorable Christine M. Arguello during pre-assignment screening of this case. ECF 13. Claims One through Three against the CDOC Defendants in their official capacities, for which Plaintiff sought monetary damages and retrospective injunctive relief, were dismissed by this Court on June 25, 2019 (ECF 42).

illegal conduct violated clearly established law, and their proffered evidence demonstrates issues of material fact. For the reasons that follow, the Court will grant the CDOC Defendants' motion.

## FINDINGS OF FACT

The Court makes the following findings of fact viewed in the light most favorable to Plaintiff, who is the non-moving party in this matter.

1.  On May 23, 2017, at approximately 4:30 p.m. Defendant Michael Jones[3] responded to a call from the Sterling Correctional Facility Living Unit (LU) 8 C pod; on arriving, Jones saw other officers struggle with Offender Jiovanni Sanchez ("J. Sanchez") at a table in the unit. Affidavit of Michael Jones, July 15, 2019 ("Jones Aff."), ¶ 3, Def. Ex. B.

2.  Jones observed Officer Friend apply a "mandibular angle" to J. Sanchez's right side while his table restraints were removed. *Id.* ¶ 5. Jones helped other officers escort J. Sanchez back to his cell. *Id.*

3.  At that time, Jones turned around and saw the Plaintiff, who was sitting at the same table at which J. Sanchez had been removed, take a pair of wrist restraints off the ring next to him at the table. *Id.* ¶8; Video 16:34:39 - 16:35:07, Def. Ex. D.[4]

4.  Plaintiff concedes that he "grabbed" the handcuffs Jones left on the table. Declaration of Christopher Sanchez, August 6, 2019 ("Sanchez Decl.") at 2.

---

[3]The "affidavit" produced and executed by Defendant Alan Pescador is neither notarized nor sworn under penalty of perjury and, therefore, the document is not admissible evidence pursuant to Fed. R. Civ. P. 56(c)(4) and/or 28 U.S.C. § 1746. *See Ankeney v. Zavaras*, No. 2012 WL 224441, at *4 (D. Colo. Jan. 25, 2012).

[4]The video provided as evidence contains no sound and the view of Plaintiff is from behind looking down on Plaintiff's head and shoulders; the remainder of the view of Plaintiff is mostly obstructed until he stands up and moves out of the unit.

5.    Jones drew his Taser and pointed it at Plaintiff. Jones Aff. ¶ 8. Two other officers approached and surrounded Plaintiff on each side. Video 16:35:14 - 16:35:24.

6.    Jones verbally commanded the Plaintiff to put down the restraints. Jones Aff. ¶ 9.

7.    Plaintiff heard Jones say, "put down the cuffs, punk." He was offended at the term "punk," and responded, "who the f— do you think that you're talking to?" Sanchez Decl. at 2.

8.    Jones observed Plaintiff tossing the restraints around. Jones Aff. ¶ 10.

9.    Another officer approached and at or after the time Jones deployed his Taser, the other officer deployed Oleoresin Capsicum ("OC") spray to Plaintiff's head and neck area. Video 16:35:24 - 16:35:37; Jones Decl. ¶¶ 11-12.

10.    Plaintiff dropped the restraints on the floor; he experienced pain in his eyes and lungs and "felt as if [he] was going to suffocate to death." Sanchez Decl. at 2.

11.    The video reveals that Plaintiff's head disappeared at 16:35:27, but he raised his head and started moving his head and shoulders at 16:35:33.

12.    After J. Sanchez was removed from Unit 8 in a transport chair, officers removed the Plaintiff's table restraints and escorted the Plaintiff out of the unit by foot. Video 16:40:53 - 16:42:22.

13.    During the entirety of the video, from 16:31:52 to 16:43:01, there is nothing indicating that any officer "held the Plaintiff upward and started beating him while he choked," particularly during the seven-to-eight minutes after they sprayed him.

## **LEGAL STANDARDS**

A motion for summary judgment serves the purpose of testing whether a trial is required. *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1185 (10th Cir. 2003). The Court shall grant

3

summary judgment if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A fact is material if it might affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). No genuine issue of material fact exists "unless the evidence, construed in the light most favorable to the non-moving party, is such that a reasonable jury could return a verdict for the non-moving party." *Hasan v. AIG Prop. Cas. Co.*, 935 F.3d 1092, 1098 (10th Cir. 2019) (quoting *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004)).

The moving party bears the initial responsibility of providing to the Court the factual basis for its motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "The moving party may carry its initial burden either by producing affirmative evidence negating an essential element of the nonmoving party's claim, or by showing that the nonmoving party does not have enough evidence to carry its burden of persuasion at trial." *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2002). Only admissible evidence may be considered when ruling on a motion for summary judgment. Fed. R. Civ. P. 56(c); *World of Sleep, Inc. v. La–Z–Boy Chair Co.*, 756 F.2d 1467, 1474 (10th Cir. 1985).

The non-moving party has the burden of showing there are issues of material fact to be determined. *Celotex*, 477 U.S. at 322. That is, if the movant properly supports a motion for summary judgment, the opposing party may not rest on the allegations contained in his complaint, but must respond with specific facts showing a genuine factual issue for trial. Fed. R. Civ. P. 56(e); *Scott v. Harris*, 550 U.S. 372, 380 (2007) ("[t]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment;

4

the requirement is that there be no genuine issue of material fact.") (citation omitted); *see also Hysten v. Burlington N. & Santa Fe Ry.*, 296 F.3d 1177, 1180 (10th Cir. 2002). These specific facts may be shown " 'by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves.'" *Pietrowski v. Town of Dibble*, 134 F.3d 1006, 1008 (10th Cir. 1998) (quoting *Celotex*, 477 U.S. at 324). "[T]he content of summary judgment evidence must be generally admissible and…if that evidence is presented in the form of an affidavit, the Rules of Civil Procedure specifically require a certain type of admissibility, i.e., the evidence must be based on personal knowledge." *Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1122 (10th Cir. 2005); *see also Hasan*, 935 F.3d at 1098 ("'Unsubstantiated allegations carry no probative weight in summary judgment proceedings.").

"The court views the record and draws all inferences in the light most favorable to the non-moving party." *Pepsi–Cola Bottling Co. of Pittsburg, Inc. v. Pepsico, Inc.*, 431 F.3d 1241, 1255 (10th Cir. 2005).

## II.     Treatment of a Pro Se Plaintiff's Filings

Because Plaintiff proceeds pro se in this case, the court "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted); *see also Haines v. Kerner*, 404 U.S. 519, 520–21 (1972) (holding allegations of a pro se complaint "to less stringent standards than formal pleadings drafted by lawyers"). At the summary judgment stage of litigation, a plaintiff's version of the facts must find support in the record. *Thomson v. Salt Lake Cty.*, 584 F.3d 1304, 1312 (10th Cir. 2009). That is, pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, to overcome a motion for summary judgment the nonmovant must go beyond the pleadings and set

forth specific facts—such as affidavits, depositions, declarations, or stipulations—that would be admissible in evidence in the event of a trial. Conclusory, self-serving affidavits do not satisfy this standard, *Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir. 1991), nor do unsupported conclusory allegations, *L&M Ents., Inc. v. BEI Sensors & Sys. Co.*, 231 F.3d 1284, 1287 (10th Cir. 2000). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Thomson*, 584 F.3d at 1312.

## **ANALYSIS**

The CDOC Defendants contend that they are entitled to qualified immunity on the remaining claims, in that Plaintiff cannot demonstrate a genuine issue of material fact as to whether Defendants violated his constitutional rights and Plaintiff can point to no clearly established law from which Defendants were on notice of possible violations. In addition, Defendants argue the Plaintiff's claims for injunctive relief have been rendered moot by his transfer to another facility and/or they fail because the Defendants have no authority to grant the requested relief. The Court will address each challenge as presented.

**I.    Qualified Immunity from Liability for Money Damages**

In their individual capacities, the CDOC Defendants base their request for summary judgment on the doctrine of qualified immunity, which protects from litigation a public official whose possible violation of a plaintiff's civil rights was not clearly a violation at the time of the official's actions. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "Qualified immunity balances two important interests - the need to hold public officials accountable when they exercise power irresponsibly and

the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Because qualified immunity is an immunity from suit, rather than a mere defense to liability, it is effectively lost if a case is erroneously permitted to go to trial. *Id*. at 231; *Ahmad v. Furlong*, 435 F.3d 1196, 1198 (10th Cir. 2006) ("The privilege is an immunity from suit rather than a mere defense to liability."). The "driving force behind creation of the qualified immunity doctrine was a desire to ensure that insubstantial claims against government officials will be resolved prior to discovery." *Pearson*, 555 U.S. at 231-232 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640, n.2 (1987)). Accordingly, qualified immunity questions must be resolved at the earliest possible stage in litigation." *Id*. at 232.

When a defendant asserts the defense of qualified immunity at summary judgment, the plaintiff has a two-fold burden to overcome the asserted immunity: (1) "rebut the [defendant's] no-constitutional-rights arguments"; and (2) "demonstrate that any constitutional violation was grounded in then-extant clearly established law." *Cox v. Glanz*, 800 F.3d 1231, 1245 (10th Cir. 2015) (citing *Riggins v. Goodman*, 572 F.3d 1101, 1107 (10th Cir. 2009)); *see also Felders v. Malcom*, 755 F.3d 870, 877–78 (10th Cir. 2014) ("[T]he 'record must clearly demonstrate the plaintiff has satisfied his heavy two-part burden; otherwise, the defendants are entitled to qualified immunity.'"), *cert. denied*, ––– U.S. –––, 135 S. Ct. 975, 190 L. Ed. 2d 890 (2015). An official's conduct violates clearly established law when, at the time of the challenged conduct, "[t]he contours of [a] right [are] sufficiently clear" that every "reasonable official would have understood that what he is doing violates that right." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). To satisfy the clearly established prong of the test, the Tenth Circuit requires that "there must be a Supreme Court or Tenth

7

Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Clark v. Wilson*, 625 F.3d 686, 690 (10th Cir.2010).

Traditionally, there has been a two-step process for resolving qualified immunity questions: "First, a court must decide whether the facts that a plaintiff has alleged . . . or shown . . . make out a violation of a constitutional right. . . . Second, if the plaintiff has satisfied this first step, the court must decide whether the right at issue was clearly established at the time of the defendant's alleged misconduct." *Pearson*, 555 U.S. at 232 (quoting *Saucier v. Katz*, 533 U.S. 194 (2001) (internal citations and quotation marks removed)). However, the Supreme Court has afforded courts the discretion to decide "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id*. at 236; *see also Christensen v. Park City Mun. Corp.*, 554 F.3d 1271, 1277 (10th Cir. 2009).

    A.    <u>Does Plaintiff Identify Clearly Established Law for His Excessive Force Claims Against Defendants Jones, Pescador, and Arguello?</u>

The Court has liberally construed Plaintiff's complaint as asserting "excessive force" in Claims One and Two against Defendants Jones, Pescador, and Arguello, particularly as both claims are based on the same set of facts.[5] *See* Order, ECF 42.

"[A]n excessive force claim involves two prongs: (1) an objective prong that asks if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation, and (2) a subjective prong under which the plaintiff must show that the officials acted with a sufficiently

---

[5]"Post-conviction claims for excessive force are brought under the Eighth Amendment." *Roska v. Peterson*, 328 F.3d 1230, 1242 (10th Cir. 2003) (citing *Metcalf v. Long*, 615 F. Supp. 1108, 1118-20 (D. Del. 1985)); *see also United States v. Jones*, 254 F. App'x 711, 718 (10th Cir. 2007) (noting the difference between "excessive force in a prison setting (Eighth Amendment - cruel and unusual punishment) [and] excessive force outside the prison setting (Fourth Amendment - reasonable search and seizure).").

8

culpable state of mind." *Redmond v. Crowther*, 882 F.3d 927, 936–37 (10th Cir. 2018) (quoting *Giron v. Corr. Corp. of Am.*, 191 F.3d 1281, 1289 (10th Cir. 1999)). An official has a culpable state of mind if he uses force "maliciously and sadistically for the very purpose of causing harm," rather than "in a good faith effort to maintain or restore discipline." *Id.* at 936-37 (citing *Whitley v. Albers*, 475 U.S. 312, 320–21 (1986)).

In denying the CDOC Defendants' motion to dismiss Plaintiff's excessive force claims, the Court found the law prohibiting Defendants' alleged conduct in "assaulting" Plaintiff with OC spray in the face and eyes and with fists and knees to the body while he was shackled and unmoving was clearly established by the Supreme Court and Tenth Circuit Court of Appeals at the time of the alleged incident in May 2017. Order, ECF 42 (citing *Hudson v. McMillian*, 503 U.S. 1, 5 (1992) and *Miller v. Glanz*, 948 F.2d 1562, 1564, 1567 (10th Cir. 1991)). The Court noted the Plaintiff's failure to identify any clearly established law in response to the motion, but concluded "even if the Plaintiff here was required, but failed, to point to clearly established law in this case, the Plaintiff's ***allegations*** constitute 'the rare obvious case, where the unlawfulness of the officer's conduct [taken as true] is sufficiently clear even though existing precedent does not address similar circumstances'" *Id.* (citing *City of Escondido v. Emmons*, -- U.S. --, 139 S. Ct. 500, 504 (2019)) (emphasis added).

At the summary judgment stage, however, the Plaintiff must move past his allegations and present evidence demonstrating material factual issues as to each claim. *See Fields v. Okla. State Penitentiary*, 511 F.3d 1109, 1112 (10th Cir. 2007) ("bald allegations cannot preclude summary judgment"). Here, Plaintiff affirmatively points to four cases supporting his argument that Defendants violated clearly established law: two published Tenth Circuit opinions, one unpublished Tenth Circuit opinion, and one unpublished district court opinion. Resp. 5. But, "a single

9

unpublished district court opinion is not sufficient to render the law clearly established," *Morris v. Noe*, 672 F.3d 1185, 1197 n.5 (10th Cir. 2012) and, even if it were published, the unpublished Tenth Circuit opinion was decided in 2018 *after* the events giving rise to Plaintiff's claim and cannot support a conclusion that Defendants' conduct violated law clearly established at the time.

The remaining published Tenth Circuit opinions Plaintiff identifies are *Smith v. Cochran*, 339 F.3d 1205, 1212 (10th Cir. 2003) and *Serna v. Colo. Dep't of Corr.*, 455 F.3d 1146, 1152 (10th Cir. 2006). While *Smith* also involved a claim of excessive force in violation of the Eighth Amendment, the court concluded that a prison guard or someone in "custody" of a prisoner can be liable for sexual abuse against the prisoner. *Id.* at 1216. No such allegation has been made in this case. Furthermore, *Serna* also involved an Eighth Amendment excessive force claim, but the court made no new findings concerning the plaintiff's claim stating, "we already held in *Serna I* that "[a] factual dispute plainly exists on whether members of the Special Operations Response Team used excessive force and whether the injuries Mr. Serna clearly sustained stemmed from such force." *Id.* at 1152 (citing *Serva v. Colo. Dep't of Corr.*, 108 F. App'x 570, 575 (10th Cir. 2004)). To the extent this Court may rely on the unpublished opinion in *Serna I*, the Tenth Circuit found the plaintiff demonstrated factual issues as to whether prison guards, who were tasked with investigating whether his cellmate possessed a weapon, entered the plaintiff's cell, threw him to the ground, screamed obscenities while threatening him with weapons, and stomped and kicked him with their boots. *Id.*

While *Serna* is more closely analogous to the facts of this case than *Smith*, the Court finds *Serna* did not put correctional officers on notice that they would violate a prisoner's right against excessive force by "tasing" and deploying OC spray against a prisoner who concededly grabbed a set of handcuffs and would not drop them when the officers commanded him to do so. Accordingly,

10

the Court finds Plaintiff has failed to identify clearly established law to overcome Defendants' assertion of qualified immunity from liability for Plaintiff's excessive force claims.

      B.      <u>Does Plaintiff Demonstrate Material Factual Issues Regarding His Deliberate Indifference Claims Against Pescador and Arguello?</u>

Plaintiff alleges for his third claim that "Pescador and Arguello sprayed OC into [Plaintiff's] face. These men violated medical orders which is tantamount to denial of or interference with medical care." Am. Compl. 8. He also alleges these Defendants "forcefully held [Plaintiff] in place while striking him with knees and closed fists as Sanchez choked and suffocated," as he was "unable to utilize his rescue inhaler." *Id.*

"[P]rison officials violate the Eighth Amendment's ban on cruel and unusual punishment if their 'deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain.'" *Self v. Crum*, 439 F.3d 1227, 1230 (10th Cir. 2006) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). Plaintiff must meet both the objective and subjective components constituting the test for deliberate indifference. *Callahan v. Poppell*, 471 F.3d 1155, 1159 (10th Cir. 2006). "The objective prong of the deliberate indifference test examines whether the prisoner's medical condition was 'sufficiently serious' to be cognizable under the Cruel and Unusual Punishment Clause." *Al–Turki v. Robinson*, 762 F.3d 1188, 1192 (10th Cir. 2014). The Tenth Circuit established that "[a] medical need is considered sufficiently serious to satisfy the objective prong if the condition 'has been diagnosed by a physician as mandating treatment or is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Id.* at 1192–93 (quoting *Oxendine v. Kaplan*, 241 F.3d 1272, 1276 (10th Cir. 2001)).

The subjective component is met if Plaintiff demonstrates the Defendants "knew [they] faced a substantial risk of harm and disregarded that risk, by failing to take reasonable measures to abate

it." *Callahan*, 471 F.3d at 1159 (quoting *Kikumura v. Osagie*, 461 F.3d 1269, 1293 (10th Cir. 2006), *overruled on other grounds as recognized in Robbins v. Oklahoma*, 519 F.3d 1242, 1246 (10th Cir. 2008)). The subjective component requires an "inquiry into a prison official's state of mind when it is claimed that the official has inflicted cruel and unusual punishment." *Kikumura*, 461 F.3d at 1293 (quoting *Farmer*, 511 U.S. at 838). This component is equivalent to "criminal recklessness, which makes a person liable when she consciously disregards a substantial risk of harm." *Beauclair v. Graves*, 227 F. App'x 773, 776 (10th Cir. 2007) (quoting *Mata v. Saiz*, 427 F.3d 745, 752 (10th Cir. 2005)).

In its order denying Defendants' motion to dismiss, the Court found that Plaintiff alleged a plausible claim for deliberate indifference to his serious medical need:

> First, Sanchez's allegations that he requires a rescue inhaler for an asthma attack and a medical order prohibiting OC spray plausibly allege the objective prong that he suffers from a condition "diagnosed by a physician as mandating treatment." *See al-Turki*, 762 F.3d at 1192. Second, as set forth above, Sanchez plausibly alleges the subjective component by asserting that Pescador and Arguello knew of the medical order prohibiting use of OC spray at or near Sanchez, but "consciously disregarded a substantial risk of serious harm" when they sprayed him in the face and eyes, he suffered an asthma attack during which he "choked and suffocated," and Defendants "denied [him] access to his rescue inhaler" while they "str[uck] [Sanchez] with knees and closed fists." Am. Compl. 8.

Order, ECF 42 (citing *Hines v. Wallace*, 982 F.2d 528, 1992 WL 372367, at *3 (10th Cir. Dec. 10, 1992) ("Failure to attend to a prisoner's medical needs, whether the result of prison guards denying access to medical care or intentionally interfering with the treatment once prescribed, may violate this prohibition if it amounts to 'deliberate indifference.'")). Here, however, even if the Plaintiff's declaration shows that he suffers from a medical condition requiring that he avoid exposure to OC spray, the Court finds Plaintiff fails to demonstrate a genuine issue of material fact as to whether

12

Pescador and Arguello knew of his medical condition and/or any order prohibiting use of OC spray at or near him.

In his response brief, Plaintiff argues that Pescador and Arguello have "not established the absence of a genuine issue of material fact" as to their "knowledge of the Plaintiff's medical condition and standing medical order to not use OC gas on the Plaintiff." Resp. 6-7. Defendants reply arguing that they, in fact, did not know of any medical order because none existed at the time of the events challenged here. Jere Hammer, Health Services Administrator at Buena Vista Correctional Facility ("BVCF"), has testified that she "performed a search of Offender Sanchez' health records for any standing orders regarding the use of OC applicable to" him, which included "records generated during [Plaintiff's] incarceration within the CDOC, including his time at Sterling Correctional Facility, Colorado State Penitentiary, and here at BVCF." Affidavit of Jere Hammer, August 27, 2019, ¶¶ 5-6. Hammer's search revealed "one record regarding the use of OC," which reflects that on July 31, 2017, while Plaintiff was housed at the Colorado State Penitentiary, Kathleen Boyd entered a "temporary" housing restriction, from July 31, 2017 to July 31, 2018, of "no OC/ISPRA (Oleoresin Capsicum or Tear Gas)." *Id.* ¶ 7; *see also* Housing Restrictions Order, ECF 57-1. The order was "discontinued" on August 1, 2018.

Based on this unrebutted evidence, the Court finds Plaintiff has failed to demonstrate Pescador and Arguello "consciously disregarded a substantial risk of harm" when they sprayed him with OC spray on May 13, 2017. *See Mata*, 427 F.3d at 752. The record reflects no indication that Pescador and/or Arguello knew that Plaintiff had asthma and/or needed to avoid exposure to OC spray. Thus, the Court concludes that Defendants Pescador and Arguello are entitled to qualified immunity from liability for Claim Three.

## II. Mootness of Plaintiff's Request for Injunctive Relief

The Court has construed Plaintiff's Amended Complaint liberally to acknowledge his request for prospective injunctive relief in the form of an order "prohibiting similar violence or assault against the victim and assurance that this will never occur again." *See* Order, ECF 42 (citing Am. Compl. 14). Defendants contend that this request became moot when he was transferred to another facility and/or that they have no authority to grant him the relief requested. Plaintiff did not respond to Defendants' arguments regarding his request for injunctive relief.

Defendants are correct that Plaintiff's request for an order against Defendants Jones, Pescador, and Arguello "prohibiting similar violence or assault" was rendered moot when he moved away from the Sterling Correctional Facility. "[A] case becomes moot when the court can no longer grant an effectual remedy." *Cleveland v. Martin*, 590 F. App'x 726, 729 (10th Cir. 2014). "Federal subject-matter jurisdiction can be lost through mootness by changes in prison conditions while [a case] is pending." *Id.* In *Cleveland*, the Tenth Circuit found that because the prisoner plaintiff was no longer incarcerated at the facility at which he allegedly suffered constitutional violations, he was "beyond the reach of Defendants" and, thus, "an injunction against them would not improve [plaintiff's] circumstances." *Id.* at 729-30.

Similarly, in this case, the Plaintiff seeks to remedy his conditions by ordering a prohibition of "similar violence or assault" against Defendants Jones, Pescador, and Arguello; however, there is no indication that these Defendants are employed at BVCF, the facility at which the Plaintiff currently resides. Therefore, the Court concludes that Plaintiff's request for prospective injunctive relief against the Defendants in their official capacities was rendered moot when he transferred away

from Sterling Correctional Facility. Defendants are entitled to summary judgment as to Plaintiff's request.

## **CONCLUSION**

The Court concludes that it lacks jurisdiction to hear Plaintiff's claims for prospective injunctive relief against the CDOC Defendants in their official capacities. Moreover, Plaintiff has failed to demonstrate material factual issues for his deliberate indifference claims and to identify clearly established law for his excessive force claims; accordingly, Defendants Jones, Pescador, and Arguello are entitled to qualified immunity from liability for Plaintiff's Claims One, Two, and Three against them.

Therefore, the CDOC Defendants' Motion for Summary Judgment [filed July 15, 2019; ECF 45] is **granted**. Plaintiff's claims against Defendants Pescador, Arguello, and Jones are dismissed and the Clerk of the Court is directed to remove these Defendants from the case caption.

With respect to Plaintiff's third claim for relief against Defendant Nurse Samantha, the Court will hold a Status Conference on November 25, 2019 and will set the conference by separate order.

SO ORDERED.

Dated this the 29th day of October, 2019, in Denver, Colorado.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge